AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original  ☐ Duplicate Original

| LODGED |
| --- |
| CLERK, U.S. DISTRICT COURT |
| 01/05/2026 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: EC DEPUTY |

# UNITED STATES DISTRICT COURT

for the

Central District of California

| FILED |
| --- |
| CLERK, U.S. DISTRICT COURT |
| 01/05/2026 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY:____JD____ DEPUTY |

United States of America

v.

JOSHUA DANIEL ZOLTAN,

Defendant

Case No. **8:26-mj-00004-DUTY**

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of July 8, 2024 in the county of Orange in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii) | Possession with Intent to Distribute Methamphetamine |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*/s/ Hunter Richardson*
*Complainant's signature*

Hunter Richardson, Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    January 5, 2026

*Karen E. Scott*
*Judge's signature*

City and state:   Santa Ana, California

Hon. Karen E. Scott, U.S. Magistrate Judge
*Printed name and title*

AUSA: Erin Kiss

## AFFIDAVIT

I, Hunter Richardson, being duly sworn, hereby declare and state as follows:

### I.  INTRODUCTION

1.   I am an Investigator with the Anaheim Police Department ("APD") and also a federally deputized Task Force Officer ("TFO") presently working with the Federal Bureau of Investigation ("FBI").  As a TFO with the FBI, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

2.   I am assigned to the Orange County Violent Gang Task Force ("OCVGTF").  The OCVGTF is composed of federal and local law enforcement agencies, including, but not limited to, the FBI, the Drug Enforcement Agency ("DEA"), the Fullerton Police Department ("FPD"), the Anaheim Police Department ("APD"), the Santa Ana Police Department ("SAPD"), and the California Department of Corrections and Rehabilitation ("CDCR").  The OCVGTF is responsible for, among other things, investigating violations of federal law committed by criminal street gangs, the Mexican Mafia, and other violent criminal organizations in Orange County.  Prior to this assignment with the FBI, I was an APD Police Officer and Gang Investigator for about seven years.

3.   I have specialized training and experience in investigations of narcotics trafficking and criminal street gangs.  During my time as a Police Officer, as well as an FBI

TFO, I have conducted and participated in numerous investigations of criminal activity, specifically including narcotics trafficking and violent offenses committed by street gangs.  Since joining the OCVGTF in November of 2024, I have specialized in investigations of the Mexican Mafia and its subordinate gangs in Orange County.  As part of these investigations, I have also learned about the drug trafficking organizations that supply street gangs with illegal narcotics.

## II. <u>PURPOSE OF AFFIDAVIT</u>

4.    This affidavit is made in support of a criminal complaint and arrest warrant against JOSHUA DANIEL ZOLTAN ("ZOLTAN") for a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(viii) (Possession with Intent to Distribute Methamphetamine).

5.    The facts set forth in this affidavit are based upon information obtained from other law enforcement personnel, my personal knowledge, and my training and experience.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically noted otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. <u>SUMMARY OF PROBABLE CAUSE</u>

6.    On July 8, 2024, APD officers conducted a traffic enforcement stop near Kathryn Drive and Lincoln Avenue in Anaheim, California after observing a white Chevrolet Malibu

blocking a driveway with expired registration.  At the time of the stop, ZOLTAN was in the driver's seat and J.N. was in the front passenger seat.

7.   Officers searched the vehicle and found ZOLTAN's wallet and identification on the driver's side and a gray backpack located at his feet on the driver's floorboard.  The backpack contained approximately 198.6 grams of suspected methamphetamine (including packaging), approximately 52.7 grams of suspected fentanyl (including packaging), a narcotics pay/owe ledger, and multiple cellular phones, including an iPhone belonging to ZOLTAN.  Laboratory analysis confirmed that the substances contained methamphetamine and fentanyl and/or a fentanyl analog.  Based on ZOLTAN's control of the vehicle, the location of the narcotics, ownership of the phone found with the drugs, and evidence of coordination with J.N., officers determined ZOLTAN knowingly possessed controlled substances with the intent to distribute.

## IV. STATEMENT OF PROBABLE CAUSE

**A.   July 8, 2024 Arrest of ZOLTAN**

8.   I reviewed the police report prepared by APD Officers, Investigators, and Detectives who were involved in the investigation regarding the July 8, 2024 arrest of ZOLTAN. Based on my review of the report and my communication with Officers, I have learned the following facts:

9.   On July 8, 2024, at approximately 7:42 p.m., APD officers were conducting uniformed patrol near Kathryn Drive and Lincoln Avenue in Anaheim, California.  Officers saw a white

3

Chevrolet Malibu parked along the curb blocking the driveway of 121 N. Kathryn Drive.  A records check revealed the vehicle's registration had expired.  The vehicle was occupied by two people, later identified as ZOLTAN, who was seated in the driver's seat, and J.N., who was seated in the front passenger seat.

10.  As officers approached the vehicle to initiate enforcement action, both occupants exited the vehicle.  ZOLTAN was detained as the driver and person in control of the unregistered vehicle.  J.N. was also detained as the passenger. During the detention, officers observed J.N. making furtive movements toward his waistband and pockets.  Based on J.N.'s suspicious movements, APD officers conducted a pat-down search on J.N., which revealed a plastic bag containing a white crystalline substance consistent with methamphetamine in J.N.'s pocket, as well as a folding knife concealed in his waistband. J.N. was arrested for possession of methamphetamine.

11.  Following J.N.'s arrest, officers conducted a search incident to arrest and a probable cause search of the front passenger area of the vehicle.  Officers recovered narcotics, drug paraphernalia, packaging materials, a digital scale, and $1,409 in United States currency in multiple denominations from J.N.'s backpack, consistent with narcotics sales.  Additional suspected fentanyl, cocaine, and methamphetamine were concealed in containers within the backpack.  In a <u>Mirandized</u> interview, J.N. admitted that the backpack in the passenger area was his, that the narcotics and currency found in his backpack belonged

4

to him, and that he regularly purchases controlled substances in bulk quantities.  Based on the discovery of narcotics and related evidence associated with J.N., officers conducted a further search of the vehicle.

12.  On the driver's side of the vehicle, officers located a wallet wedged between the driver's seat and driver's door containing ZOLTAN's California driver's license and personal identification, establishing his dominion and control over the vehicle.  Officers also located a gray backpack positioned on the driver's floorboard directly adjacent to the gas and brake pedals, an area immediately accessible to ZOLTAN while operating the vehicle.

13.  Inside the gray backpack, officers recovered a large plastic bag containing approximately 198.6 grams of suspected methamphetamine, as well as multiple plastic bags containing approximately 52.7 grams of suspected fentanyl.  Officers also recovered a notebook containing names, monikers, numerical notations, and weight measurements consistent with a narcotics pay/owe ledger used to document drug transactions. Additionally, officers recovered three cellular telephones from the backpack, including an Apple iPhone that ZOLTAN admitted belonged to him.

14.  Based on their training and experience, officers recognized the quantities of methamphetamine and fentanyl recovered from the driver's floorboard backpack as being far in excess of amounts intended for personal use, representing thousands of individual doses and a wholesale street value of

several thousand dollars.  The presence of bulk narcotics, a pay/owe ledger, multiple cellular telephones, individual packaging materials, and large sums of currency recovered from within the vehicle is consistent with possession with intent to distribute controlled substances.

15.  ZOLTAN was arrested and later advised of his Miranda rights.  During a post-arrest interview, ZOLTAN denied knowledge of the narcotics found inside the vehicle and claimed he was unaware of the gray backpack located at his feet on the driver's floorboard.  However, ZOLTAN admitted he was the primary driver of the vehicle, admitted ownership of the iPhone located inside the backpack containing the narcotics, and admitted he regularly purchases fentanyl in large quantities.  ZOLTAN also claimed he randomly encountered J.N. prior to the stop, which was contradicted by J.N.'s statement that the two had coordinated their meeting.

16.  Based on the totality of the circumstances, including ZOLTAN's control of the vehicle, the location of the narcotics directly at his feet, the presence of his personal cellular phone inside the narcotics backpack, the large quantities of methamphetamine and fentanyl, the pay/owe ledger, and evidence showing coordination with J.N., officers formed the opinion that ZOLTAN knowingly possessed methamphetamine and fentanyl with the intent to distribute, and that he was acting in concert with J.N.to sell controlled substances.

B.    **Laboratory Confirms Presence of Controlled Substances**

17.    The Orange County Crime Laboratory analyzed the controlled substances recovered from ZOLTAN's possession, specifically the gray backpack found on the driver's seat floorboard, using accepted forensic methods, including color testing, crystal testing, gas chromatography–mass spectrometry, and gas chromatography infrared spectroscopy.[1]  Laboratory analysis confirmed that Item #1, a white crystalline substance with a net weight of 191.919 grams (± 0.017 grams), contained methamphetamine.  Item #2, consisting of compressed white powder, was analyzed in part and confirmed to contain fentanyl and/or a fentanyl analog, with a net analyzed weight of 25.188 grams (± 0.017 grams).  A second portion of Item OCCL #2, with a gross weight of 17.909 grams, was not analyzed. Item OCCL #3, a purple powder with a net weight of 5.460 grams (± 0.017 grams), was also confirmed to contain fentanyl and/or a fentanyl analog.

C.    **Additional Cases involving ZOLTAN that demonstrate Intent to Distribute Controlled Substances**

18.    In this section, the amounts of narcotics are approximate, as they come from police reports rather than lab reports.  The identification of the substances is based on the

---

[1] The narcotics found in J.N.'s possession were also tested by the Orange County Crime Lab. These narcotics were found to have the following: a white crystalline substance with a net weight of 2.632 grams (± 0.017 grams), contained methamphetamine, an off-white powder 1 of 2, net weight of 944 (± 4 milligrams) contains fentanyl and/or a fentanyl analog, an off-white powder 2 of 2, net weight of 4.084 (± 0.017 grams) contains fentanyl and/or a fentanyl analog, and a white powder, net weight of 17.333 (± 0.017 grams) contains fentanyl and/or a fentanyl analog.

training and experience of an officer involved in the arrest, not a lab report.

19.  On October 6, 2023, ZOLTAN was contacted by Fountain Valley Police officers during a late-night patrol in a residential neighborhood under circumstances consistent with a possible theft occurring.  ZOLTAN was found in possession and control of a vehicle containing burglary tools, stolen mail, multiple credit and debit cards belonging to other individuals, a digital scale with drug residue, cash in multiple denominations, and significant quantities of methamphetamine and fentanyl consistent with sales rather than personal use. Officers recovered approximately 27.3 grams of methamphetamine and approximately 19.3 grams of fentanyl, along with packaging materials and a cellular phone belonging to ZOLTAN that was actively receiving calls during the encounter.  Subsequent investigation confirmed the mail recovered from ZOLTAN's vehicle had been stolen during a nearby vehicle burglary earlier that same night, and multiple victims confirmed ZOLTAN was not authorized to possess their identification or financial cards. A court-authorized forensic examination of ZOLTAN's cell phone revealed extensive communications, images, and messages consistent with narcotics trafficking, including negotiations for bulk quantities, use of drug-related terminology, coordination of meet-ups, Cash App payment discussions, and photographs of narcotics and scales. Based on the totality of the evidence, officers determined ZOLTAN was engaged in the possession of methamphetamine and fentanyl for the purpose of

8

distribution, as well as identity theft and possession of stolen property, and arrested him accordingly.

20.  On January 17, 2024, ZOLTAN was contacted by law enforcement during a traffic stop in Midway City and was found in possession of a backpack containing approximately 42.2 grams of methamphetamine packaged in multiple baggies, along with a glass pipe used to smoke methamphetamine.  Based on training and experience, the quantity and packaging were consistent with possession for sale rather than personal use.  ZOLTAN admitted the substance was methamphetamine and acknowledged possessing multiple "batches" obtained from different sources.  A records check confirmed ZOLTAN had prior arrests for possession of controlled substances for sale.  Based on the totality of the circumstances, officers determined ZOLTAN possessed methamphetamine for the purpose of distribution and recommended felony charges for possession for sale and possession of paraphernalia.

21.  On February 17, 2024, Garden Grove Police Officers responded to a video-monitored call for service at 9848 Chapman Avenue regarding vandalism and suspected narcotics activity involving a red Honda Accord.  Live surveillance footage showed ZOLTAN spray-painting the rear of the business while associated female subjects prepared and handled a large quantity of suspected narcotics.  Officers arrived and detained ZOLTAN and the other suspects at ZOLTAN's vehicle.  Searches of the subjects and ZOLTAN's vehicle revealed significant quantities of suspected fentanyl and methamphetamine, along with multiple

empty plastic baggies consistent with packaging for distribution, a replica Glock-style air pistol, and over $1,600 of United States currency in various denominations.  Large quantities of narcotics were located throughout ZOLTAN's vehicle, including the driver's door, passenger area, trunk, tire compartment, and multiple bags associated with ZOLTAN, totaling approximately 25.8 grams of suspected fentanyl and 64.4 grams of suspected methamphetamine.  One of the suspects admitted under Miranda that the fentanyl belonged to ZOLTAN and that she was in the process of trading an electric bike to ZOLTAN in exchange for narcotics at the time officers arrived. In a Mirandized interview, ZOLTAN admitted ownership of narcotics located in the trunk of the vehicle and acknowledged lifelong involvement with drugs.  Based on the volume of narcotics, packaging materials, currency, corroborating witness statements, surveillance footage, and officer observations, there is probable cause to believe ZOLTAN knowingly possessed fentanyl and methamphetamine with the intent to distribute, while utilizing associates to facilitate narcotics transactions.

22.  On July 24, 2024, members of the Orange County Sheriff's Department North Gang Enforcement Team conducted enforcement activity at 8200 Bolsa Avenue, Space 95, Midway City, the registered residence of ZOLTAN, a convicted felon prohibited from possessing firearms.[2]  During the investigation,

---

[2] I reviewed ZOLTAN's criminal history and confirmed that he sustained seven felony convictions between 2008 and 2018 for various offenses including burglary, felon in possession of
*(footnote cont'd on next page)*

10

deputies detained F.A., who was on PRCS with search terms, and recovered approximately 22.3 grams of fentanyl from his person, along with Xanax pills and methamphetamine paraphernalia.  A search of F.A.'s cellular phone revealed a geo-tagged photograph of a rifle taken minutes earlier inside the residence.  Deputies subsequently obtained a search warrant and recovered three operable firearms, including an unserialized P80 handgun, an unserialized 7.62x39 rifle, and a FN PS90 rifle, along with large quantities of narcotics from multiple bedrooms within the residence.  Recovered narcotics included over 800 grams of suspected fentanyl in various packages and approximately 25 grams of methamphetamine and additional methamphetamine packaged in separate quantities.  Deputies also located digital scales, packaging materials, and pay/owe sheets, all consistent with narcotics sales.  Investigators located ZOLTAN's mail and tax documents inside the rooms where the firearms and narcotics were found, establishing his residency and dominion and control. Based on the volume of narcotics, sales indicia, the presence of multiple firearms, documentary evidence tying ZOLTAN to the residence, and corroborating digital and witness evidence, deputies determined there was probable cause to believe ZOLTAN knowingly possessed fentanyl and methamphetamine with intent to distribute and unlawfully possessed firearms in concert with others.

---

ammunition and firearms, taking a vehicle without consent, and various controlled substance related offenses, including possession of controlled substances for sale.

11

23. On October 21, 2024, Garden Grove Police officers responded to a vehicle burglary in progress near Knott Street and Lampson Avenue, during which ZOLTAN stole fully loaded firearm magazines and ammunition from the victim's vehicle before fleeing on foot. ZOLTAN led officers on an extended foot pursuit through an industrial area before being apprehended. A search incident to arrest revealed ZOLTAN was carrying a bag containing approximately 160 grams of methamphetamine, approximately 8.5 grams of fentanyl, a drug pay/owe notebook detailing prices and quantities, and approximately $1,774 in United States currency. The victim positively identified ZOLTAN during an in-field show-up, and surveillance footage placed ZOLTAN in the area during the burglary. A records check confirmed ZOLTAN is a convicted felon, making his possession of firearms and ammunition unlawful. Based on the totality of the circumstances, officers determined there was probable cause to believe ZOLTAN possessed methamphetamine and fentanyl with intent to distribute, unlawfully possessed ammunition, committed vehicle burglary, and resisted arrest.

24. On July 10, 2025, in Stanton, California, law enforcement officers observed ZOLTAN committing a pedestrian violation while pushing an electric bicycle in a high-crime area known for narcotics trafficking and violent offenses. Upon detention and pat-down, officers located a loaded .25 caliber Raven Arms pistol in ZOLTAN's backpack, along with approximately 7.51 grams of fentanyl packaged in multiple small portions, $3,093 in cash of mixed denominations, and two cell phones.

12

ZOLTAN admitted to daily fentanyl use, though he denied ownership of the firearm.  ZOLTAN was arrested for possession of fentanyl for sale while armed, felon in possession of a firearm and ammunition, carrying a loaded firearm in public, and related offenses.

25.  On October 14, 2025, in Westminster, California, patrol officers observed ZOLTAN riding an electric bicycle at nighttime without a forward-facing light, in violation of the California Vehicle Code.  Officers attempted to conduct a traffic enforcement stop of ZOLTAN for a violation of the California vehicle code.  ZOLTAN failed to yield during the traffic stop and a vehicle pursuit ensued.  During the pursuit, ZOLTAN violated multiple vehicle codes before crashing his bicycle.  Upon detention, officers located on ZOLTAN's person and in his backpack approximately 197.7 grams of a crystalline substance consistent with methamphetamine, 13.4 grams of a white powdery substance consistent with fentanyl, 22.2 grams of marijuana, over $3,200 in cash, multiple cell phones, and a key fob.  Based on the quantity, packaging, and large sums of cash, these items were consistent with narcotics distribution.  Zoltan was arrested on multiple felony warrants and charged with possession of controlled substances for sale, possession of fentanyl, and related offenses.

///

///

## V.   <u>CONCLUSION</u>

26.   For all the reasons described above, there is probable cause to believe that ZOLTAN has committed a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(viii) (Possession with Intent to Distribute Methamphetamine).

Attested to by the applicant
in accordance with the
requirements of Fed. R.
Crim. P. 4.1 by telephone on
this  5      day of January
2026.

_____
HONORABLE KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

14